Resubmit

FILED
JUL 09 2024
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ DEP CLK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

CIVIL ACTION NO.: 5:23-cv-704-M

THERESSA GLOVER and GUILLERMO

MALDONADO-SANCHEZ,

Plaintiff,

v.

DAVID WITHERSPOON IN HIS INDIVIDUAL CAPACITY AS

A RDU POLICE OFFICER; CHRIS SLAVIK IN HIS INDIVIDUAL

CAPACITY AS A RDU POLICE OFFICER; JUSTIN JOHNSON

IN HIS INDIVIDUAL CAPACITY AS A RDU POLICE OFFICER;

RDU AIRPORT AUTHORITY.

AMENDED COMPLAINT

JURY TRIAL DEMANDED

UNDER Fed. R. Civ. P. 38(b)

Defendant.

For their Complaint, Plaintiff(s) Theressa Glover, Guillermo Maldonado-Sanchez as Pro-Se Litigants, states and alleges as follows:

## Introduction

1) This cause of action arises out the permanent banning of Mrs. Glover and Mr. Sanchez from RDU Airport Property at 1000 Trade Dr. Morrisville N.C. 27560. (Public Property) The breaking of State Laws that prohibit the public from being banned from the public areas of the airport (NC General statute 63-26.1) and breaking State law that prohibits interference with TNC business (§ 20-280.10)

2) This cause of action is for money damages brought pursuant to 42 U.S.C. § 1983, 1985 to redress the deprivation under color of state law of Mrs. Glover and Mr. Sanchez's clearly established rights as secured by the First, Sixth, and Sixteenth Amendments to the United States Constitution against (1) Defendants David Witherspoon ("Witherspoon"), Chris Slavik ("Slavik"), Justin Johnson ("Johnson") in their respective capacities as duly-certified law enforcement officers employed by RDU Airport Police Department (collectively, the "Defendant Officers"), for their respective violations of Mrs. Glover and Mr. Sanchez's right to Freedom of Speech, The right to assemble in public areas, The right to Due Process. (2) Defendant RDU Airport Authority for its unconstitutional policies, customs and/or practices under Monell and its progeny.

## Jurisdiction and Venue

3) This court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1985.
4) Venue is proper in this Court under 28 U.S.C. § 1391 (b) because all incidents, events, and occurrences giving rise to this action occurred in the District of North Carolina. Moreover, upon information and belief, all of the parties reside in this Judicial District.

## The Parties

5) At all times relevant hereto Plaintiff Theressa Glover is and has been a citizen of the United States and the county of Wake, State of North Carolina.
6) At all times relevant hereto Plaintiff Guillermo Maldonado-Sanchez is and has been a citizen of the United States and the county of Wake, State of North Carolina.
7) The RDU Police Department ("RDUPD") is and was at all times material hereto an Airport Agency, providing the vehicle through which the Airport fulfills its policing functions.

8) Upon information and belief, Defendant Witherspoon is and was at all times material hereto a citizen of the United States and the state of North Carolina.
9) Witherspoon was at all times material hereto employed by RDU Airport Police Department as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.
10) Upon information and belief, Defendant Slavik is and was at all times material hereto a citizen of the United States and the state of North Carolina.
11) Slavik was at all times material hereto employed by RDU Police Department as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.
12) Upon information and belief, Defendant Johnson is and was at all times material hereto a citizen of the United States and the state of North Carolina.
13) Johnson was at all times material hereto employed by RDU Police Department as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

## Factual Allegations

### Mrs. Glover:

14) On or about December 30, 2021 Mrs. Glover went to the RDU Police Department to seek assistance from RDU police with a male who had been stalking, harassing, and intimidating her.
15) Mrs. Glover spoke to an officer Ceasar. Upon Mrs. Glover explaining what had been going on. Officer Ceasar told Mrs. Glover there was nothing that he could do.
16) Mrs. Glover continued to endure the harassment, stalking, and intimidation for another month.

17) On or about January 28, 2022 Mrs. Glover called RDU Police Department and requested an officer to come to the Uber Staging lot. RDU Police called Mrs. Glover back and asked her to come to the police department to sign a statement.
18) Mrs. Glover went to RDU police department to sign the statement. Upon her arrival Mrs. Glover was met by at least 10 police officers. Mrs. Glover started to fill out the statement when one of the officers says to her 'If you fill out that statement you will be banned for life'.
19) Mrs. Glover refused to fill out the statement and left the RDU police department.
20) Mrs. Glover went back to the Uber staging lot and pulled up to the guy that had been harassing her. She said to him to stop stalking her and stop harassing her. She also said to him that she had spoke to the police about him, thinking if he saw that she was serious that he would leave her alone. Instead, he files a complaint with RDU police department against Mrs. Glover. The complaint was all lies.
21) Three days later on or about February 1, 2022 Mrs. Glover got a phone call from Lt. David Witherspoon advising Mrs. Glover that she has been banned for life from RDU Airport property.
22) Mrs. Glover explained to Lt. Witherspoon that she did not do what she was accused of and that she had evidence that proved she did not do anything wrong.
23) Lt. Witherspoon told Mrs. Glover that she could speak to Captain Slavik the next day if she did not agree with being banned.
24) On or about February 2, 2022 Mrs. Glover called and spoke with Captain Slavik. She explained all the events that had happened up to that point, and she told Captain Slavik that she was innocent of the allegations against her. Captain Slavik told Mrs. Glover to call him back in three days.
25) On or about February 5, 2022 Mrs. Glover called Captain Slavik back, and at that time Captain Slavik said that the ban would remain in effect for life because Mrs. Glover admitted to saying a curse word. Mrs. Glover asked Captain Slavik about a hearing. Captain Slavik told Mrs. Glover that she would not get a hearing because she wasn't charged with a crime.

26) Mrs. Glover later contacted Chief Myers and explained to him what happened and Chief Myers asked Mrs. Glover to come to RDU police department to fill out a statement.
27) Mrs. Glover did go to RDU police department. She filed a statement, but never heard back from Chief Myers. Captain Slavik emailed Mrs. Glover letting her know that Chief Myers had made him the point of contact for Mrs. Glover.
28) Mrs. Glover reached back out to Captain Slavik for an update to the statement she had filed, but Mrs. Glover never got a response back.
29) Mrs. Glover then reached out to the grounds transportation director Tyler Mayhu asking for a hearing so she could clear her name. Mr. Mayhu told Mrs. Glover a week later that he had spoke to the lawyers at RDU Airport, and they said that Mrs. Glover would not get a hearing.
30) Mrs. Glover during this time started talking to drivers and had found out that she was not the only one that this had happened to. Every driver that had been banned had very similar stories.
31) Other drivers said that they had not done anything that would cause a life time ban. Not one driver had been charged with a crime, and not one driver had any Due Process Protections.
32) Around March 2023 Mrs. Glover contacted RDU Police Chief Witherspoon. Mrs. Glover Had advised Chief Witherspoon that it had been over a year and again asked for a hearing. By this time Mrs. Glover had found out that trespass notices in N.C. are only good for one year. § 161.705.
33) In or about March 2023 Chief Witherspoon advised Mrs. Glover that RDU was in the final stages of putting a panel together to review bans.
34) Mrs. Glover called and emailed Chief Witherspoon in May 2023 for an update to the panel reviewing bans, but got no response.
35) Later Mrs. Glover called RDU Airport police department and spoke to the lady that answers the phone for non-emergency calls. Mrs. Glover asked who is over the Chief? The lady tells Mrs. Glover there is no one over the Chief. Mrs. Glover then ask does the Chief not answer to someone higher? The lady connected Mrs. Glover to a Lt., when Mrs. Glover asked about the panel the Lt. told her that there was no panel to review bans.

36) Upon speaking to other older Uber drivers, Mrs. Glover finds out that there is an Airport Authority. Mrs. Glover emailed each Airport Authority Board Member asking for an opportunity to address the board at the next board meeting about the discrimination practices within the RDU Police Department. Not one board member reached back out to Mrs. Glover.
37) The day the RDU Airport Authority board met. Chief Witherspoon called Mrs. Glover. Chief Witherspoon tells Mrs. Glover that they think they have found a way to reinstate her, but she had to come to a meeting. Mrs. Glover agreed.
38) On September 8, 2023 Mrs. Glover goes to the meeting with Chief Witherspoon, Tyler Mayhu, and the assistant Chief of police.
39) Chief Witherspoon was trying to get Mrs. Glover to sign a release letter for RDU Airport. This letter was signed by RDU Airport Authority and the CEO Michael Landguth.
40) First Mrs. Glover was told she could not take the letter with her, and when Mrs. Glover refused to sign the letter Chief Witherspoon rudely tells Mrs. Glover not to come back.

## Mr. Sanchez

41) On October 13, 2022 Mr. Sanchez was at RDU Airport Uber staging lot when he was given a rider that had to be picked up at terminal 2 zone 8.
42) Upon arrival at terminal 2 zone 8 to pick up his passenger Officer Justin Johnson started screaming at Mr. Sanchez and talking rudely to Mr. Sanchez with out any just cause for the rude behavior.
43) Mr. Sanchez approached officer Johnson and asked officer Johnson why he was speaking to Mr. Sanchez in that manor. Officer Johnson continued his verbal assault on Mr. Sanchez.
44) Mr. Sanchez asked Officer Johnson for his name and badge number because he wanted to file a complaint.

45) Officer Johnson told Mr. Sanchez to remain in his car and Officer Johnson stood in front of Mr. Sanchez's car for about 30 minutes not allowing Mr. Sanchez to leave.
46) When officer Johnson came to Mr. Sanchez's driver side window, He handed Mr. Sanchez a trespass notice and told him he had been banned for life from RDU Airport Property.
47) The Passenger that observed Officer Johnson's behavior before Mr. Sanchez arrived and witnessed the interaction between officer Johnson and Mr. Sanchez, Handed Mr. Sanchez his business card and told Mr. Sanchez that if he needed a witness to call him.
48) The next day Mr. Sanchez called and spoke to Chief Witherspoon. Mr. Sanchez told Chief Witherspoon what had happened.
49) Chief Witherspoon told Mr. Sanchez that he would call him back on the following day after he spoke to Officer Johnson.
50) The following day Mr. Sanchez did not hear from Chief Witherspoon, so Mr. Sanchez emailed Chief Witherspoon.
51) Chief Witherspoon never contacted Mr. Sanchez back.

## **The RDU Airport Authority's History of Overlooking Racially Biased Policing**

52) Upon information and belief, Minorities make up 90% of all Uber/Lyft drivers at RDU Airport
53) The RDU Police Department is currently being investigated for unlawful race-based policing, which deprives people of color, and those associated with them of their civil rights under North Carolina Human Rights Act.
54) Upon information and belief, RDU Airport Police have made it a practice to ban Uber/Lyft drivers. The majority of those bans are of minorities who drive for Uber/Lyft.

## **RDU Airport Authority's Notice Of Prior Incidents**

55) In 2014 WRAL wrote a story on RDU Airport Police trespassing over 100 Uber/Lyft drivers.
56) In the WRAL story dated October 30, 2014. RDU spokesperson told WRAL that Uber/ Lyft was an illegal taxi service.
57) On April 13, 2018 the director of operations Duane Legan (The person over the police and fire department- A non-officer) cuts off an Uber driver coming into the airport.
58) Miss Boswell the Uber driver honked at Mr. Legan for cutting her off.
59) Mr. Legan used his hand radio to signal Miss Boswell to pull over, but she didn't pull over because Mr. Legan was in a plain car with a female in the front seat, so she didn't think he was an officer.
60) Mr. Legan followed Miss Boswell to her parking spot and then blocked her in.
61) Mr. Legan then jumped out of his car Identifying himself as the head of the police department and demanded Miss Boswell to give him her drivers license.
62) Mr. Legan was screaming that if you can't drive no better than that then you will not be driving at RDU Airport.
63) Mr. Legan called for an officer to come to the scene.
64) When the officer got there Miss Boswell willfully gave him her ID.
65) Miss Boswell told the officer what had happened.
66) The officer called his commander and the commander told the officer to trespass Miss Boswell.
67) Miss Boswell an African American Uber driver had done nothing wrong.
68) On the other hand, it is our belief that in this situation Mr. Legan impersonated being an officer.
69) The next day Miss Boswell wanted to file a complaint, but for RDU to keep this incident a secret they reinstated Miss Boswell. Mr. Legan continued him employment with RDU Airport as Director of Operations.
70) In 2018 Claudett Dewey was at the Uber staging lot talking to some drivers. She leaned against a woman's car while she was talking. The car

owner got out of her car and started cursing Miss Dewey out and threatening her. Miss Dewey in turn cursed the woman out.
71) The RDU police showed up and without asking who started it or doing any sort of investigation, RDU Police issue a trespass notice to Miss Dewey. Miss Dewey is an African American Female.
72) I am sure that a lot more incidents will come out through Discovery.

## Count I NC General statute 63-26.1
## Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein

73) RDU Airport Police practice discrimination by banning Uber/Lyft drivers from airport property for life without any Due Process procedures to protect the drivers from unjustified charges or accusations.
74) Upon information and belief, 95% to 98% of the persons that have been banned from RDU airport property, that worked as Uber/Lyft drivers are minorities.
75) Upon information and belief, RDU Airport target this group of people because RDU Airport did not want Uber/Lyft to operate at RDU airport dating back to 2014 when they banned over 100 drivers. They continue to ban drivers to present date.
76) Upon information and belief, RDU Police make up reasons to ban drivers to forward their discrimination practices.
77) RDU Airport is a public property that is open to the general public.
78) No N.C. laws were broken by the Plaintiffs
79) As a public area that is open to the public. The Plaintiffs have a right to assemble.
80) The Plaintiffs were never charged or ticketed.
81) The Plaintiffs were never given proper warning for any bad behavior.
82) The plaintiffs were never given an opportunity to contest the ban through Due Process.

83) Through the agreement with Uber/Lyft, TNC drivers have a contractual right to conduct business at RDU Airport.
84) Witherspoon, Slavik, and Johnson used their position as sworn officers of the law to intimidate, and to punish those they deemed less worthy.
85) None of the defendant officers had a reasonable belief that disorderly conduct had occurred **at any point in time.**

## Count II § 20-280.10.
## Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein

86) It is against NC law for RDU Airport police to limit the operation of TNC services.
87) By banning Uber/Lyft drivers RDU is in fact limiting TNC services.
88) Through the contract with Uber/Lyft to allow drivers to conduct business on RDU Airport Property, Mrs. Glover and Mr. Sanchez have a right to conduct business at RDU Airport.

## Count III First Amendment Violations
## Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein

89) Lt. Witherspoon broke Mrs. Glover's First amendment rights when he banned her for saying a curse word.
90) Under the 1st Amendment Mrs. Glover has the right of free speech that is not considered fighting words. Mrs. Glover has the right to be present in public spaces that are open to the public with out the fear of being arrested.
91) Officer Justin Johnson banned Mr. Sanchez for life because Mr. Sanchez asked officer Johnson for his name and badge number. Officer

Johnson broke Mr. Sanchez's 1st amendment right to free speech. There is no law in the United States that says you can not ask a police officer to identify their self. Mr. Sanchez's 1st amendment right to be present in public spaces that are open to the public was violated when he was told he would face arrest if he comes on Airport property.

92) On October 1, 2021 Miss Glover had a discussion with a driver, and in this discussion, she told the driver that "if you don't like being parked next to that person then take your ass to another parking spot. You don't own the parking lot".

93) The exchange between Mrs. Glover and the other driver did not rise to the level of being criminal.

94) On October 13, 2022 Mr. Sanchez asked officer Johnson for his name and badge number.

95) What Mr. Sanchez asked was in no way a criminal act.

96) When officer Johnson told Mr. Sanchez to return to his car, Mr. Sanchez did so without incident.

97) Mr. Sanchez was well within his right as a citizen to request an officer to identify himself.

98) Banning Mrs. Glover and Mr. Sanchez infringed on their 1st amendment right to be present in public spaces.

99) Neither Mrs. Glover nor Mr. Sanchez committed any crime that would jeopardize their right to be in a public area.

100) RDU police are known to harass Uber/Lyft drivers to demonstrate dominance over the drivers by harassing them or threatening to ban them.

101) RDU Police have a history of making up laws or rules to harass drivers.

102) At no time has RDU Police given out or posted rules that need to be followed on RDU property.

103) Mrs. Glover at one point asked for a copy of the rules from a Lt. when the Lt. was at the staging lot told drivers that they cannot get out of their cars or they will face arrest. No rules were ever given to Mrs. Glover or any other driver.

104) The reason that Mrs. Glover was banned for life per her conversation with both Chief Witherspoon and Captain Slavik was because she

admitted saying a curse word. The fact that Mrs. Glover said the word "Ass" was well within her right to freedom of speech.
105) On the night that Mrs. Glover said the word "Ass" no one called the RDU police to report Mrs. Glover.
106) RDU police did not know that Mrs. Glover said the curse word until she admitted it on or about January 28, 2022, Four months later.

## Count IV Sixth Amendment Violations
### Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein

107) Upon banning both Mrs. Glover and Mr. Sanchez neither was afforded a right to be heard in a court of law.
108) The act of banning the Plaintiffs qualified the plaintiffs to substantive or procedural due process.
109) RDU Police eliminate the court system when they ban a person, and not give the person the right to be heard.
110) It is the Plaintiffs belief that RDU Police do not charge individuals with crimes or ticket them because then they would have a right to be heard by an impartial judge.
111) In the practice of banning people from RDU Airport. RDU Police have adopted a discrimination practice that targets minorities and anyone associated with those minorities.

## Count V Fourteenth Amendment Violations
### Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein

112) Both, Mrs. Glover and Mr. Sanchez were banned for life from RDU Airport Property, the action of a life time ban would qualify them for substantive or procedural Due Process protections.

113) nor shall any State deprive any person of life, liberty, or property, without due process of law; Mrs. Glover nor Mr. Sanchez were given an opportunity to be heard in front of an impartial hearing when they were banned by RDU Police.
114) RDU Police through banning people and not giving them an opportunity to be heard in a court of law. Deprive people of liberty and property without Due Process.
115) As an Uber/Lyft driver at RDU Airport, we are not given the same equal protections of the law as a regular citizen would be given.
116) Uber/Lyft drivers are targeted and scrutinized by RDU Police on a regular basis without just cause.
117) Mrs. Glover has witnessed many occasions that RDU Police would randomly harass drivers over laws or rules that don't exist.
118) When Mrs. Glover questioned the officer about a copy of the rules the officer ignored her request.
119) Mrs. Glover has a video of one of these harassment sessions that includes 5 RDU police officers harassing an Uber driver over a law that does not exist.
120) When RDU Police ban a driver or ticket them without the opportunity to be heard they are causing damages to the person's income.
121) In NC a trespass notice is only good for one year for the same act, but RDU Police use the trespass notice as a life time sentence.
122) People who commit far worse crimes than saying the word "ASS" or asking an officer for his name and badge number get far less punishments. Again, proving that Uber/Lyft drivers are not afforded the same protections under the law at RDU Airport.

## Count VI 1983 Violations
**Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein**

123) Upon belief and information, RDU police department practice discrimination through harassment and threats of minority drivers on a

regular basis to instill dominance and fear. They threaten minority drivers with tickets or life time bans for frivolous or fictional reasons. When RDU police do ban a driver, they come up with fictional reasons for the paper work so it appears to be a just cause. RDU police do not charge anyone that they ban with a crime because it would more than likely be thrown out in a court proceeding. RDU police have willfully and intentionally targeted minorities or anyone associated with them for their discrimination practices because minorities that work for Uber/Lyft typically do not know what their rights are, and do not have the resources to hire an attorney to fight back against the corruption within the RDU Police Department.

124) RDU Police have targeted Uber/Lyft drivers through their banning or ticketing practices
125) RDU police tend to harass drivers that are minorities, whom are uneducated about the laws and their rights, or are immigrants who are citizens, but they don't understand the laws or may have a language barrier.
126) As RDU police officers they exhort their dominance through targeted harassment of drivers.
127) Majority of the trespassed drivers are minorities and that by itself constitutes discrimination.
128) Mrs. Glover was discriminated against by RDU Police department because of her affiliation with minorities.

## Count VII 1985 Claims- Conspiracy
### Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein

129) NC General statute 63-26.1 says that it is unlawful for anyone to be banned from airport property in N.C., unless it is an area that is so enclosed as it is meant to keep people out.
130) RDU Police officers Justin Johnson, David Witherspoon on different dates wrote trespass notices that were identical in language.

131) It is the Plaintiffs belief that through the evidence of the trespass notices that were given to both Mrs. Glover and Mr. Sanchez that someone at some point instructed Witherspoon and Johnson on how to write the trespass notices, and an agreement was made.
132) The Plaintiffs have evidence that multiple RDU Police officers at various times have trespassed Uber/Lyft drivers constituting an agreement and a conspiracy.
133) The plaintiffs have evidence that the Director of Operations participated in this conspiracy with the banning of Miss Boswell.
134) The Plaintiffs have evidence that the Director of Grounds Transportation participated in this conspiracy through his involvement of Mrs. Glover's trespass and the meeting that happened on September 8, 2023.
135) The conspiracy of banning drivers continues at RDU Airport through another form of banning. (Taking Drivers out of cue)
136) The Plaintiff Mrs. Glover has a copy of the release letter that David Witherspoon wanted her to sign. In this letter it states that RDU Airport could (Re-Ban) Mrs. Glover. The letter was signed by RDU Airport Authority and the CEO Michael Landguth. Meaning they had knowledge that Mrs. Glover had been banned and that they would ban her again. This simple word re-ban shows that even at the highest levels of management at RDU Airport have an agreement about banning people, and in this case Uber/Lyft drivers off RDU property. This shows that the conspiracy starts at the top.

### Count VIII – Failure to supervise and properly train staff
### Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein

137) On October 30, 2014 WRAL wrote a story about RDU Police banning over 100 Uber/Lyft drivers.
138) A spokesperson for RDU said that Uber/Lyft was an illegal taxi service.

139) The NC statute that says you can't be banned from Airport property was made a law in 2012.
140) When the WRAL story was wrote in 2014 that banning people from airport property was illegal, it would be reasonable to think that RDU Airport Authority would have corrected that mistake.
141) Banning of Uber/Lyft drivers has continued from 2014 to present.
142) No one from RDU Airport authority has corrected the issue of banning people for 10 years even after it was publicly announced in 2014.
143) The Director of Operations threatened to Ban Miss Boswell.
144) RDU Airport Authority and the CEO threatened to re-ban Mrs. Glover.
145) David Witherspoon banned Mrs. Glover
146) Justin Johnson banned Mr. Sanchez
147) Master Officer Furmick banned Miss Boswell.
148) Chris Slavik upheld the banning of Mrs. Glover
149) Chief Myers did not correct the banning of Mrs. Glover.
150) At every level of management at RDU airport there has been instances of the law being broken by banning of people off RDU Airport property. (Public Property that is open to the public) Creating a policy or custom.
151) Mrs. Glover emailed all 8 board members in August 2023 to discuss the discrimination practices within the RDU police department. RDU Airport Authority board members did not reply.
152) Upon belief and knowledge, the knowledge of banning people off RDU airport property went all the way to the top, there was no need for RDU Airport Authority to properly supervise the RDU Police. They had full knowledge of the police banning minority Uber/Lyft drivers.
153) With deliberate indifference to the rights of citizens, RDU Airport Authority failed to provide adequate training to its officers on the laws that govern the airport and the civil right of the citizens.
154) As a direct and proximate result of the acts and omissions described herein, Mrs. Glover and Mr. Sanchez suffered compensatory damages and special damages as defined under Federal common law and in an amount to be determined by a jury.

155) With deliberate indifference to the rights of citizens, RDU Airport Authority failed to provide adequate training to its officers.
156) RDU Airport Authority was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.
157) As such, RDU Airport Authority was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.
158) The failure to train and/or to appropriately modify training constituted official RDU Airport policies, practices, or customs.
159) RDU Airports failure to train and/or to modify training was behind the acts and/or omissions of the Defendant Officers.
160) Plaintiffs are entitled to recovery of cost and fees under 42 U.S.C. § 1988.

161) The conduct described in all of the preceding paragraphs amount to wrongful acts and omissions.

162) As a direct and proximate result of these wrongful acts and omissions, Mrs. Glover and Mr. Sanchez have both suffered compensatory damages, and deliberate mental distress in an amount to be determined by a jury.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES OF FACT HEREIN**

### Prayer for Relief

Wherefore, Plaintiff Theressa Glover, Guillermo Maldonado-Sanchez prays for judgement against defendants as follows:

1) As to count (I) through (VII), a money judgement against Defendants Witherspoon, Slavik, and Johnson for compensatory, special, and punitive damages and punitive damages together

with cost and disbursements, including reasonable attorney fees, under 42 U.S.C. . § 1988 and prejudgment interest.
2) As to count VIII, As to Count II, a money judgment against Defendant RDU Airport Authority for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.
3) As to count VIII, The plaintiffs request injunctive relief against RDU Airport Authority for the unlawful practice of banning people from the public property of RDU Airport.
4) As to count VIII, The Plaintiffs request injunctive relief against RDU Airport Authority from interfering with TNC services at RDU Airport.

Dated: May 30, 2024

Signed by

Theressa Glover

Guillermo Maldonado-Sanchez